# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 06-20934

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2007

Charles R. Fulbruge III
Clerk

JENNIFER ARMOUR,

Plaintiff-Appellant,

v.

BEYONCÉ G. KNOWLES; BEYONCE PUBLISHING;
SEAN PAUL HENRIQUES; SCOTT S. STORCH; ROBERT WALLER;
EMI MUSIC PUBLISHING, LTD.; TVT MUSIC, INC.;
SONY MUSIC ENTERTAINMENT, INC.; COLUMBIA RECORDS, INC.;
ATLANTIC RECORDING CORPORATION;
SHAWN CARTER, Presently Known as Jay-Z;
EMI APRIL MUSIC, INC.; V.P. MUSIC GROUP, INC.;
BLACK OWNED MUSIK; NOTTING DALE SONGS, INC.;
MUSIC OF WINDSWEPT, INC.;
HITCO MUSIC PUBLISHING, LLC, Doing Business as HITCO South;
CARTER BOYS PUBLISHING; IRVING MUSIC, INC.;
DUTTY ROCK MUSIC; HOTTIS WE DO HITS MUSIC;
SCOTT STORCH MUSIC,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PER CURIAM:

I.

Jennifer Armour, an aspiring singer and songwriter, composed a demo tape that she hoped would help advance her career. Produced in early January 2003, the material on the tape included an instrumental version of her song, "Got a Little Bit of Love for You" (hereinafter "Little Bit of Love"). On February 12, 2003, Armour registered a copyright of an a cappella version of "Little Bit of Love." On May 1, 2006, she registered a copyright of an instrumental version of the same song.

Sometime between January and March 2003, Armour's manager, Marc McKinney, sent copies of the tape to a number of people thought to be associated with Beyoncé Knowles, a successful, popular rhythm-and-blues artist. After sending the tapes, McKinney heard nothing in response, nor were any of the tapes returned.

Meanwhile, in February 2003, Beyoncé entered a recording studio and began work on a new album with collaborators Robert Waller and Scott Storch. The album included a song entitled "Baby Boy." After finishing in the studio, Beyoncé decided to add a guest artist, Sean Paul, who contributed a section to the song. Beyoncé commercially released "Baby Boy" on June 24, 2003, and it soon became a hit.

Armour claims to have heard Beyoncé perform "Baby Boy" at a concert and to have been struck by the similarities between that song and her own. On July 11, 2005, Armour filed a suit for copyright infringement against Beyoncé, Robert Waller, Scott Storch, Sean Paul, their respective record labels, and various other parties alleged to have been involved in the creation and distribution of "Baby Boy" (all defendants hereinafter collectively referred to as "Beyoncé"). Armour

claims she had a valid copyright to "Little Bit of Love," that Beyoncé copied parts of "Little Bit of Love" in creating "Baby Boy," and that the two songs sound substantially similar to establish a claim of infringement. Armour principally claims Beyoncé copied portions of the melody of the two-bar "hook"SSpop parlance for "chorus"SSthat formed the musical heart of "Little Bit of Love."[1]

Beyoncé successfully moved for summary judgment, contending that Armour had not established any genuine issues of material fact. Although the district court found summary judgment inappropriate as to some elements of Armour's copyright infringement claim, it concluded that no reasonable jury could find the two songs substantially similar. The court also awarded Beyoncé costs. We affirm the judgment, dismiss the appeal of an order awarding costs, and deny a motion to strike record excerpts.

II.

We review a summary judgment de novo, applying the same standards as did the district court. Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003). To prove copyright infringement, a plaintiff must establish

---

[1] Armour's hook repeats twice and accompanies the following lyrics:

Let me know what you wan-na do, ba-by it's your call
Got-ta l'il bit a love for you, I can stop it or make it grow
Let me know what you wan-na do, ba-by it's your call
Got-ta l'il bit a love for you, I can stop it or make it grow

Beyoncé's hook repeats four times and accompanies the following lyrics:

Ba-by boy you stay on my mind, ful-fill my fan-ta-sies
I think a-bout you all the time, I see you in my dreams
Ba-by boy not a day goes by, with-out my fan-ta-sies
I think a-bout you all the time, I see you in my dreams

The lyrics differ in word and substance: Armour's evince somewhat less love for her "ba-by"SS "a l'il bit"SSand somewhat more control over such love, which she can "stop" or "make grow;" Beyoncé's suggest a deeper and more stubborn love, which pervades her thoughts, dreams, and "fan-ta-sies." Yet, though the nature and depth of their loves may differ, Armour claims they find expression by way of the same musical melody.

(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity.[2]

The second prong, factual copying, can be proved by direct or circumstantial evidence. To make out a circumstantial claim, a plaintiff must prove that (1) the defendant had access to the copyrighted work before creation of the infringing work and (2) the works contain similarities that are probative of copying.[3] In other words, for the circumstantial case of factual copying, the combined existence of access to the copyrighted work and similarities between the two works establishes the assumption as a matter of law that copying in fact occurred. Once a plaintiff circumstantially establishes factual copying, the defendant may rebut the circumstantial evidence if he can prove that he independently created the work. Positive Black Talk, 394 F.3d at 367-68.

Finally, once a valid copyright and factual copying have been established, the plaintiff must establish the third prong of substantial similarity. Here, the plaintiff must show that the copyrighted expressions in the two works are sufficiently alike that the copyright to the original work has been infringed. Id.

Armour sought to establish the second prong circumstantially by proving access and probative similarity. Beyoncé disputed access and probative similarity and sought to rebut factual copying by claiming independent creation. The district court refused to grant summary judgment on access, probative similarity, or independent creation but granted summary judgment on the third prong of substantial similarity.

---

[2] Positive Black Talk, Inc. v. Cash Money Records, Inc., 394 F.3d 357, 367 (5th Cir. 2004). Factual copying and substantial similarity have sometimes been collectively termed "actionable copying." Id.

[3] Id. at 367-68. Alternatively, factual copying may be proved by showing such a "striking similarity" between the two works that the similarity could only be explained by actual copying. Id. at 371 n.10; see also Selle v. Gibb, 741 F.2d 896, 904 (7th Cir. 1984) (requiring similarity "of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.").

On appeal, Armour requests that we reverse the finding of no substantial similarity. Beyoncé asks us to affirm the substantial similarity finding or, alternatively, to affirm on the ground of access, probative similarity, or independent creation. We conclude that Armour cannot prove Beyoncé had access to Armour's demo tape before composing the allegedly infringing elements of her own song, so we affirm the summary judgment on that ground[4] and do not reach the question of probative or substantial similarity.

### III.

To establish access, a plaintiff must prove that "the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work" before creating the infringing work.[5] Indeed, "[a] bare possibility will not suffice; neither will a finding of access based on speculation or conjecture."[6] "Reasoning that amounts to nothing more than a 'tortuous chain of hypothetical transmittals' is insufficient to infer access."[7] "[O]nce the moving party has properly supported his summary judgment motion, the nonmoving party must rebut with 'significant probative' evidence."[8] Such evidence must be sufficient on its

---

[4] See LLEH, Inc. v. Wichita County, Tex., 289 F.3d 358, 364 (5th Cir. 2002) (permitting affirmance for any reason supported by the record, even if not relied on by the district court). "It is an elementary proposition, and the supporting cases too numerous to cite, that this court 'may affirm on any grounds supported by the record'. . . ." Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp., No. 06-10912, 2007 U.S. App. LEXIS 27469, at *11 (5th Cir. Nov. 28, 2007) (footnote omitted).

[5] Peel & Co. v. The Rug Market, 238 F.3d 391, 394 (5th Cir. 2001); see also Ferguson v. Nat'l Broad. Co., 584 F.2d 111, 113 (5th Cir. 1978).

[6] Peel, 238 F.3d at 394-95.

[7] Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 354 (4th Cir. 2001) (quoting Towler v. Sayles, 76 F.3d 579, 583 (4th Cir. 1996)).

[8] Ferguson, 584 F.2d at 114 (affirming summary judgment based on lack of access) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).

own to "support a jury verdict in the nonmoving party's favor."[9] Taking the access and summary judgment standards together, a plaintiff can survive summary judgment only if his evidence is significantly probative of a reasonable opportunity for access.

## A.

Beyoncé's creation of "Baby Boy" was a gradual process, involving various iterations and refinements over time. Although Beyoncé did not put the final touches on her song until March 13, 2003, the parties agree that she composed the key allegedly infringing portion of "Baby Boy"SSthe melody of the two-bar "hook"SSby February 13, 2003.[10]

Armour suggests four paths by which Beyoncé allegedly had access to Armour's demo before composing the relevant portion of "Baby Boy" on February 13. Armour maintains that her manager, Marc McKinney, mailed or passed the demo tape at the end of January[11] to four of Beyoncé's associates: Matthew Knowles, Beyoncé's father and manager; Jim Vellutato, an executive at Beyoncé's record publisher, Sony Music; Andrew Feigenbaum, an executive at Atlantic Records, the label of Beyoncé's collaborator Sean Paul; and a mysterious man

---

[9] 11 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.13[2], at 56-146 through 56-147 (3d ed. 2007); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (internal citations omitted) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

[10] During oral argument, Armour's attorney said that "what [Beyoncé] took was the essential two–bar hook that is the heart of Jennifer Armour's song" and conceded that the two-bar hook is contained on a track recorded by Beyoncé in an early rough-cut of "Baby Boy" entitled "egypt joint." That track appears on a Pro Tools Data DVD submitted to this court and time-stamped with a creation date of February 13, 2003. We have reviewed "Little Bit of Love" and "Baby Boy," and the two-bar hook is the only similarity between the songs potentially distinct enough to be probative of copying. Beyoncé maintains that "egypt joint" contains all the disputed elements of "Baby Boy." Armour has not offered evidence suggesting that those elements materially changed after the rough version was created on February 13.

[11] Armour has supported the "end of January" date with affidavits from her manager, Marc McKinney, and her producer, Lawrence Green.

known as "T-Bone," who Armour contends was a "friend" of Beyoncé's.

Although the question of when Beyoncé had access to Armour's demo tape through each of the four paths claimed by Armour remains a heavily disputed fact issue, that dispute is almost entirely eclipsed by binding judicial admissions made by Armour in her response to Beyoncé's request for admissions. In her admissions, Armour stated that the demo tapes were sent or given to Beyoncé Knowles, Matthew Knowles, Jim Vellutato, and Andrew Feigenbaum in "either late February or early March 2003."[12] (R. 509-10.). Accordingly, that date constitutes a binding judicial admission that this court must deem conclusively established under Federal Rule of Civil Procedure 26(b).[13]

The binding date of "late February or early March" makes access impossible along the paths involving Matthew Knowles, Jim Vellutato, or Andrew Feigenbaum. Because Beyoncé created the allegedly infringing portion of "Baby Boy" by February 13, Armour could not establish that Beyoncé had access before February 13 to a demo tape that was not sent to her or her associates until "late

---

[12] Armour explained during oral argument that the "late February or early March" date had been mistaken and that subsequent discovery revealed the actual date to be the "end of January." Amour did not move to amend her binding admission; although she sought to amend the date of "early March 2003" alleged in her third amended complaint, the district court denied leave to amend.

[13] The binding nature of judicial admissions conserves judicial resources by avoiding the need for disputatious discovery on every conceivable question of fact. Once a fact is formally admitted and thereby set aside in the discovery process, "the party requesting an admission is entitled to rely on the conclusiveness" of it. 7 MOORE'S FEDERAL PRACTICE, supra, § 36.03[5], at 36-21. "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." FED. R. CIV. P. 26(b); see also Am. Auto. Ass'n v. AAA Legal Clinic, 930 F.2d 1117, 1120 (5th Cir. 1991) ("'[A] Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party.' An admission that is not withdrawn or amended cannot be rebutted by contrary testimony . . . .") (quoting Advisory Committee's Note, 48 F.R.D. 487, 534 (1970)); Dukes v. S.C. Ins. Co., 770 F.2d 545, 548-49 (5th Cir. 1985) (granting summary judgment based on plaintiff's admission); Hulsey v. Texas, 929 F.2d 168, 171 (5th Cir. 1991) (same).

February or early March."[14]

## B.

The only path not blocked by Armour's admissions involves the elusive T-Bone, who was not mentioned in the admissions.[15] Armour could rely on McKinney's testimony to support her theory that a tape was mailed to T-Bone at the "end of January" and that it subsequently fell into Beyoncé's hands before she created the allegedly infringing portions of "Baby Boy" by February 13. The T-Bone hypothesis, however, remains the weakest of Armour's theories, because the nature of T-Bone's relationship with Beyoncé has not been well established in the summary judgment record. Armour has not presented enough evidence to establish a genuine issue of material fact on that surmise alone.

Specifically, Armour has offered no direct evidence to explain the nature of T-Bone's relationship to Beyoncé or the frequency with which the mysterious and unidentified "T-Bone" and Beyoncé were in contact. Instead, Armour relies solely on the affidavit of McKinney, Armour's manager. In his affidavit, McKinney states his personal belief that T-Bone and Beyoncé were good friends, but

---

[14] See McGaughey v. Twentieth Century Fox Film Corp., 12 F.3d 62, 65 (5th Cir. 1994) (stating that infringement was not possible where allegedly infringing work is created before receipt of the allegedly copied work). Moreover, McKinney's affidavit contrary to the binding admissions may not be permitted to rebut the admissions at trial. See Am. Auto. Ass'n, 930 F.2d at 1120.

[15] Armour additionally suggests that access and copying can be inferred from the fact that Beyoncé settled a copyright suit brought by a different artist claiming that "Baby Boy" infringed lyrics from his song "Hot Steppa." Armour also posits that access and copying can be inferred from Beyoncé's statement, in deposition, that "I wanted to start off with that song because we didn't have the pressure of writing a song." (Emphasis added.)

Both of these facts are irrelevant: The fact that Beyoncé settled a copyright suit with a different artist over a different song hardly proves that she had access to Armour's song. Moreover, contrary to Armour's implication, Beyoncé's reference to "that song" did not refer to Armour's song, but instead to a song supplied by Beyoncé's producer, Scott Storch, during the initial recording session. Beyoncé claims Storch had created the song himself, which was then used as inspiration and as the "musical bed" for "Baby Boy." Amour has offered no evidence to suggest that "that song" was actually Armour's song.

he provides no information about the basis for this knowledge or about the frequency with which Beyoncé and T-Bone communicated. The only other evidence supplied by the affidavit suggests that Beyoncé and T-Bone had worked together on a movie set in the past and that T-Bone had played one of Armour's previous demo tapes for everyone on the set to hear. There is no other evidence in the record to support Armour's theory implicating T-Bone. Not surprisingly, the record contains no affidavit from, or deposition of, T-Bone.

Even construed in the light most favorable to Armour, this evidence alone is not significantly probative of a reasonable opportunity for access. For a jury to infer access, it would have to make the following leaps of logic, none of which is substantiated by evidence in the summary judgment record: (1) T-Bone and Beyoncé were in fact good friends;[16] (2) T-Bone and Beyoncé regularly communicated;[17] (3) T-Bone received and listened to the demo tape that McKinney claims to have mailed to him in "late January";[18] (4) after receiving and listening to it, T-Bone gave the tape to Beyoncé; (5) Beyoncé received the tape and had the opportunity to listen to it; (6) all of this happened in the two short weeks between the date McKinney mailed the demo tape at the "end of January" and the

---

[16] Although other circuits have presumed access on the basis of a "close relationship" between the third-party intermediary and the alleged infringer, Armour has not offered reasonably probative evidence to establish that Beyoncé and T-Bone had a close relationship. See Towler, 76 F.3d at 583 (reasoning that a court may infer access if intermediary has a "close relationship" with infringer); Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 944 (8th Cir. 1992) (finding access where intermediary was "in a position to provide suggestions" to infringer). McKinney's affidavit proves only that McKinney personally believes Beyoncé and T-Bone to be good friends and does not indicate any basis for that belief. Although credibility determinations at summary judgment are resolved in favor of the non-moving party, the full weight of McKinney's affidavit establishes at most that he honestly believes them to be good friends.

[17] In her deposition, Beyoncé admits that she knows of T-Bone but maintains that they are not friends and do not communicate with one another "at all." Armour has presented no evidence to refute Beyoncé's claim.

[18] Armour has shown no evidence identifying T-Bone's address or the address to which the tape was mailed.

recording of "Baby Boy" on or before February 13.

Without more probative evidence to substantiate such a long chain of inferences, the T-Bone theory requires too much "speculation and conjecture" on which to rest the conclusion that Beyoncé had a reasonable opportunity for access. See Peel, 238 F.3d at 396. No reasonable jury could find access on the basis of that summary judgement evidence alone. Accordingly, because Armour's only theory not barred by her binding admissions fails, she cannot establish access, and her copyright claim therefore cannot survive summary judgment.[19]

## IV.

Armour argues that the district court abused its discretion in awarding Beyoncé costs. Because Armour did not file a timely notice of appeal of the post-judgment order on costs, she has waived any objection.

On September 21, 2006, the district court issued its memorandum and order granting summary judgment, from which Armour filed a timely notice of appeal. After the summary judgment order was issued, Beyoncé filed a motion for costs and attorneys' fees. On November 7, the court issued its order awarding costs to Beyoncé. On November 8, Armour filed a motion for reconsideration, which was denied, but Armour never filed a separate notice of appeal objecting to the cost award.

"'[A]n appeal from a final judgment sufficiently preserves all prior orders intertwined with the final judgment,' even when those prior orders are not specifically delineated in the notice of appeal." Fiess v. State Farm Lloyds, 392 F.3d 802, 806 (5th Cir. 2004) (emphasis added) (quoting Trust Co. v. N.N.P., Inc., 104

---

[19] Although Armour might theoretically establish factual copying without access by proving the songs are so "strikingly similar" that "copying is the only realistic basis for the similarities at hand," the songs, which we have reviewed as part of the record, are in no way similar enough for a reasonable jury to make such a finding. See 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.02[B], at 28.1 (2007).

F.3d 1478, 1485 (5th Cir. 1997)). "While an issue initially raised in a post-judgment motion may be preserved for appeal, it cannot be considered by this court unless the judgment or order disposing of it is properly noticed for appeal." Id. (emphasis added). The district court issued its order on costs almost two months after issuing its summary judgment order. Because the order on costs was a post-judgment order and not a prior order, it cannot be challenged without a separate notice of appeal.[20] We therefore do not have jurisdiction to decide whether the district court abused its discretion in awarding costs to Beyoncé.

The judgment is in all respects AFFIRMED. The appeal of the order awarding costs is DISMISSED for want of jurisdiction. The motion to strike record excerpts is DENIED.

---

[20] Armour relies on this court's rule for prior orders in arguing that the order on costs is so "inextricably intertwined" with the summary judgment order that a separate notice of appeal need not be filed. Yet, this ignores our circuit's distinction between prior orders and post-judgment orders.

We are lenient toward parties who do not separately notice appeal of prior orders so that the "party who makes a simple mistake in designating the judgment appealed from does not forfeit his right of appeal where the intent to pursue it is clear." C.A. May Marine Supply Co. v. Brunswick Corp., 649 F.2d 1049, 1056 (5th Cir. July 1981) (per curiam) (emphasis added). But the intent to appeal a post-judgment order is not usually plain from a prior notice appealing the judgment, because the post-judgment order would have been entered after the notice of appeal. One cannot usually evince an intent to appeal an order that does not yet exist. See Fiess, 392 F.3d at 806 (finding no intent to appeal where notice of appeal was filed before issuance of order); Warfield v. Fid. & Deposit Co., 904 F.2d 322, 326 (5th Cir. 1990) (same).