# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-40297

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2015

Lyle W. Cayce
Clerk

JOSE O. GUZMAN,

Plaintiff - Appellant

v.

HACIENDA RECORDS AND RECORDING STUDIO, INCORPORATED;
HACINDA RECORDS, L.P., also known as Hacienda Ranchito and/or Discos
Ranchito; LATIN AMERICAN ENTERTAINMENT, L.L.C.; RICHARD, also
known as Rick G. Garcia; ROLAND GARCIA, SR.,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.
CARL E. STEWART, Chief Judge:

Corpus Christi, Texas, is the hub of Tejano music, a genre that particularly thrived from the 1970s through the 1990s. This case requires the court to flash back to that era and scrutinize two Tejano songs that were in the mix at the time: *Triste Aventurera* ("*Triste*") and *Cartas de Amor* ("*Cartas*"). After hearing *Cartas* on the radio, Plaintiff-Appellant Jose Guzman ("Guzman") filed suit against Defendant-Appellee Hacienda Records and Recording Studio, Inc., alleging, *inter alia*, that Hacienda's release of *Cartas* infringed upon his *Triste* copyright. After a hotly contested bench trial, the

No. 15-40297

district court ruled in favor of Hacienda as to each of Guzman's claims. Because we conclude that the district court's findings were not clearly erroneous, we AFFIRM.

I.

Guzman wrote *Triste* in the early 1970s, influenced by the heartbreak of one of his companions. In the song, a woman sends a letter to her ex-lover in which she pleads with the man to take her back; the man rejects her pleas and tells her that she will be a sad adventurer for the rest of her life. Guzman filed the music and lyrics to *Triste* with the United States Copyright Office in 1974. The same year, Guzman's band, Los Duendes, recorded *Triste* on several 45-rpm records. At trial, Guzman proffered evidence tending to show that local radio stations regularly played Los Duendes' recording of *Triste* from 1974 to approximately 1990 and that Los Duendes regularly performed *Triste* at Corpus Christi's music venues during the same time. Guzman proffered no evidence that Los Duendes' recording of *Triste* enjoyed any record sales, received awards, charted on radio popularity charts, or generated royalty revenue.

Hacienda is a Tejano-based recording studio in Corpus Christi. Defendant Richard Garcia ("Garcia") handles Hacienda's day-to-day activities, including licensing and producing records and managing Hacienda's "catalog of some thousand or so albums." Sometime around 1990, a band known as the Hometown Boys[1] recorded a number of songs at Hacienda, including *Cartas*.[2]

---

[1] At the time *Cartas* was recorded, the Hometown Boys were performing under the name "El Grupo Internacional de Ricky y Jose Martinez."

[2] Although the song was recorded by the Hometown Boys at Hacienda, the trial evidence reflected that *Cartas* was actually written by Reynaldo Peña Ortiz, a songwriter who obtained a copyright registration for *Cartas* in 1990. Oddly enough, Guzman made no effort at trial to show that Ortiz, the writer of the allegedly infringing work, had access to

No. 15-40297

Hacienda did not select *Cartas* for the Hometown Boys to record, nor did it tell the band how to arrange or perform *Cartas*. Garcia completed the editing and mastering of the Hometown Boys' recording of *Cartas* but did not alter the music, melody, or lyrics of the recording.

*Cartas* and *Triste* share similar themes and lyrics. Each song is about a man who spurns his ex-lover's written effort to rejuvenate a romance. Perhaps most notably, the opening lyrics of *Cartas*—"Yo tengo en mi poder unas cartas de amor que tu me las mandastes pidiendo compasion" (I have in my possession love letters that you have sent me asking me for compassion)—match the opening lyrics of *Triste*—"Yo tengo en mi poder una carta de amor que tu me la mandaste pidiendo compasion" (I have in my possession a love letter that you have sent me asking for compassion)—with the exception of some plural words.

*Cartas* was never a hit for the Hometown Boys or Hacienda. *Cartas* was not popular with the Hometown Boys' fans; fans did not request it at performances; and it did not drive CD sales, sell as sheet music, or generate royalty revenue. At trial, Garcia went as far as to call the song "a complete flop." Eventually, the Hometown Boys stopped playing *Cartas* because it was so unpopular.

Sometime in the 1990s, Guzman heard *Cartas* on the radio and surmised that it was his song *Triste*. Years later, he filed the instant lawsuit against Hacienda, alleging that Hacienda's release of *Cartas* violated his copyright to *Triste* and that Hacienda's false identification of *Triste* as *Cartas* on various music products violated the Digital Millennium Copyright Act ("DMCA"). Over

---

*Triste*. Rather, as discussed herein, Guzman's trial evidence focused exclusively on Garcia's alleged knowledge of *Triste* before Hacienda released *Cartas*.

the course of an ensuing three-day bench trial, Guzman sought to establish that Hacienda had access to *Triste* prior to releasing *Cartas* because Garcia was active in the Corpus Christi music scene during the time when Corpus Christi radio stations regularly played *Triste* and Los Duendes regularly performed the song. Guzman also sought to establish that *Triste* and *Cartas* were "strikingly similar" such that the only explanation for their commonalities was copying and argued that an inference of copying was appropriate under a novel sliding scale approach.

In its post-trial findings, the district court ruled in favor of Hacienda as to each of Guzman's claims. Relying on credibility determinations, unclear testimony, and a lack of corroborating evidence about the song's popularity, the court concluded that Guzman failed to carry his burden to show a necessary element of his copyright infringement claim: that someone at Hacienda had a reasonable possibility of access to *Triste* before releasing *Cartas*. *See Guzman v. Hacienda Records and Recording Studio, Inc.*, No. 6-12-CV-42, 2014 WL 6982331, at *5–8 (S.D. Tex. Dec. 9, 2014) (Costa, J., sitting by designation). The court further concluded that musical differences between the songs, as well as a lack of uniqueness or complexity, fatally undercut Guzman's striking similarity argument and also declined to apply the novel sliding scale approach advanced by Guzman at trial. Finally, the court concluded that, in light of its access holding, Guzman failed to show the requisite intent—"to induce, enable, facilitate, or conceal infringement"—necessary to support his separate claim under § 1202(a) of the DMCA.[3] *See* 17 U.S.C. § 1202(a).

---

[3] Section 1202(a) of the DMCA provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a).

No. 15-40297

Guzman timely appealed to this court.  On appeal, Guzman makes three arguments: (1) that the district court erred in determining that evidence of *Triste*'s radio play and live performances of the song was insufficient to establish that Garcia had access to *Triste* before Hacienda released *Cartas*; (2) that the district court erred in its striking similarity analysis by focusing on the songs in their entirety rather than the "virtually identical" opening lyrics of *Triste* and *Cartas*; and (3) that *Triste* and *Cartas* are sufficiently similar such that the district court should have relaxed Guzman's burden to show access under a "sliding scale" analysis.  We address each argument in turn.  First, however, we briefly pause to articulate the parameters of our standard of review for a bench trial, which is largely dispositive of Guzman's arguments.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*."  *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011) (quotation marks and citation omitted); *see also* Fed. R. Civ. P. 52(a)(6) (stating that, following a bench trial, "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous").  In this circuit, "copyright issues of access . . . are findings of fact and are consequently reviewed under the clearly erroneous standard."  *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 532–33 (5th Cir. 1994) (emphasis omitted).

The Supreme Court and this circuit have stressed certain principles governing the application of the clearly erroneous standard of review following a bench trial.  *See, e.g.*, *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–75 (1985); *In re Luhr Bros., Inc.*, 157 F.3d 333, 337–39 (5th Cir. 1998).  A finding of the trial judge "is clearly erroneous when although there is evidence

to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573 (internal quotation marks and citation omitted). This standard plainly does not entitle this court to reverse the findings of the trial judge simply because we are convinced that we would or could decide the case differently. *Luhr Bros.*, 157 F.3d at 337. Indeed, the great deference owed to the trial judge's findings compels the conclusion that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 338 (alteration in original) (quoting *Anderson*, 470 U.S. at 574).

Moreover, and of particular relevance here, the clearly erroneous standard of review following a bench trial requires even "greater deference to the trial court's findings when they are based upon determinations of credibility." *Id.*; *see also* Fed. R. Civ. P. 52(a)(6) (stating that, following a bench trial, "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility"). As the Supreme Court unequivocally stated in *Anderson*, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." 470 U.S. at 575. The "trial judge's credibility determinations are due this extra deference because only [he] can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Estate of Lisle v. Comm'r*, 541 F.3d 595, 601 (5th Cir. 2008) (quoting *Anderson*, 470 U.S. at 575).

No. 15-40297

III.

With our standard of review in mind, we turn to Guzman's arguments on appeal.

A.

Guzman's first two arguments on appeal each speak to the "access" element of his copyright infringement claim. Guzman first argues that the district court erred in determining that evidence of *Triste*'s radio play and live performances in Corpus Christi, coupled with evidence of Garcia's immersion in the Corpus Christi music market, was insufficient to establish that Garcia had access to *Triste* before Hacienda released *Cartas*. Alternatively, Guzman argues that the court erred in determining that *Triste* and *Cartas* were not strikingly similar, which would have obviated Guzman's burden to show any access. We disagree with each argument.

1.

To prevail on his copyright infringement claim, Guzman bore the burden at trial to prove that: (1) he owns a valid copyright; and (2) Hacienda copied constituent elements of *Triste* that are original. *See, e.g.*, *Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). To establish the copying element, Guzman was required to show two things: factual copying and substantial similarity. *See id.* As is pertinent here, "factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Id.* at 368 (quotation marks and citation omitted). To establish "access," Guzman was required to prove that Garcia, on behalf of Hacienda, had "a reasonable opportunity to view" *Triste* before releasing

7

No. 15-40297

*Cartas*.[4]  *Armour v. Knowles*, 512 F.3d 147, 152–53 (5th Cir. 2007) (quoting *Peel & Co., Inc. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001)).  A bare possibility of access is insufficient, just as Guzman's access showing cannot be "based on speculation or conjecture." *Id.* at 153 (quoting *Peel*, 238 F.3d at 394–95).

Guzman contends that the district court erred in finding no reasonable possibility of access because Garcia had "thousands" of opportunities to hear *Triste* on Corpus Christi's radio stations and at Los Duendes' live performances of the song at Corpus Christi's music venues.[5]  In support, Guzman merely recites evidence fully presented at trial and thoroughly analyzed by the district court through the lens of inconsistent and unclear trial testimony and several resulting credibility determinations.  Under these circumstances, we have

---

[4] In his brief, Guzman argues that the applicable access standard is a "*mere* possibility," and thus the district court erred by applying a "*reasonable* possibility" standard. This argument lacks merit, as this court's precedent clearly establishes that the applicable standard is a reasonable possibility of access and that "[a] bare possibility will not suffice." *Armour v. Knowles*, 512 F.3d 147, 152–53 (5th Cir. 2007) (alteration in original) (quoting *Peel & Co., Inc. v. Rug Market*, 238 F.3d 391, 394–95 (5th Cir. 2001)). Guzman also contends that the district court incorrectly required him to show that Garcia, or a Hacienda representative, *actually* heard *Triste* on the radio or at a live performance. This argument merely attacks the district court's off-hand phrasing of the access standard in non-dispositive portions of its ruling. The district court quite clearly articulated the critical issue as "whether the totality of the evidence presents a 'reasonable possibility' that Hacienda *could have* heard *Triste* before recording *Cartas*," *Guzman*, 2014 WL 6982331, at *6 (emphasis added), which is in accord with our precedent.

[5] Guzman casts many of his arguments on appeal under an "access" framework that has been embraced by other courts. *See, e.g.*, *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143–44 (9th Cir. 2009) ("[C]ircumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated."). This circuit discussed both theories in *Peel*, but declined to adopt either because the reasonable possibility of access standard was sufficient to resolve the case at summary judgment. *See* 238 F.3d at 394–97. We similarly decline to adopt either theory here, as we are satisfied that this appeal, involving a fully tried case that was largely adjudicated based on credibility, can be resolved under the classic "reasonable possibility of access" standard discussed herein.

little difficulty affirming the district court under the clearly erroneous standard of review.

As to radio play, Guzman contends that the district court erred in finding that Garcia had no reasonable possibility of access to *Triste* in light of his trial evidence that *Triste* was played "thousands" of times on Corpus Christi radio stations from 1974 through 1990. At trial, no witness gave clear testimony as to the frequency or time period during which *Triste* was played on the radio— Guzman himself testified inconsistently in his deposition and at trial, and no other witness recalled with any certainty when or how frequently *Triste* was played. Moreover, Guzman introduced no independent evidence, *e.g.*, evidence of record sales, awards, billboard charts, or royalty revenues, to corroborate his testimony that *Triste* was popular enough to receive airplay beyond the first few years after it was released or that calls into question the district court's determination that *Triste* was infrequently played.[6] Under these circumstances, we have no reason to conclude that the district court's finding that the chances were purely speculative that Garcia heard *Triste* before Hacienda released *Cartas* was clearly erroneous.

Similarly, Guzman contends that the district court erred in finding that his evidence of Los Duendes' live performances of *Triste* from 1974 through 1990 in Corpus Christi, coupled with Garcia's admission at trial that he attended Corpus Christi's music venues on a monthly basis during the same

---

[6] We do not hold that such independent evidence of popularity is the *sine qua non* of a copyright-plaintiff's access showing. Rather, we hold only that, in the absence of such evidence and under the facts and circumstances of this case, we have no reason under the clearly erroneous standard of review to second-guess a district court's finding that a song was played infrequently on the radio.

time period, was insufficient to show a reasonable possibility of access.[7]  In finding this evidence insufficient to show access, the district court specifically acknowledged the trial evidence that Guzman highlights on appeal: testimony by Guzman and Abel Sanchez, a Los Duendes band member, that *Triste* was popular and performed throughout the 1970s, 80s, and 90s.  However, Guzman fails to account for the district court's rejection of that testimony based on credibility—at trial, Guzman hesitated and provided conflicting answers when questioned as to the time when Los Duendes regularly performed *Triste*,[8] and Sanchez could not testify with certainty as to the dates *Triste* was popular and performed.  The district court instead credited the testimony of Timoteo "Timo" Martinez, another Los Duendes band member, who testified that *Triste* hit peak performance popularity in the mid-1970s, and ultimately concluded "that even though Hacienda and Guzman were both active in Corpus Christi in the same time frame, the evidence is insufficient to show that Hacienda had a 'reasonable possibility of access' to *Triste* before 1990, the year it recorded *Cartas*."[9]  *Guzman*, 2014 WL 6982331, at *7.

---

[7] In support of his live-performance arguments, Guzman cites a number of cases in which a court either denied summary judgment on the issue of access or similarly found that the trial evidence was sufficient to support a jury verdict in favor of the plaintiff.  *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482–85 (9th Cir. 2000); *Sylvestre v. Oswald*, No. 91CIV.5060(JSM), 1993 WL 179101, at *3–5 (S.D.N.Y. May 18, 1993).  These cases are procedurally inapposite.  The issue in this case is not whether Guzman put forth sufficient evidence of access to create a genuine issue of material fact or to support a jury verdict in his favor; rather, Guzman had his day in court, the trial judge ruled against him following a bench trial, and the inquiry now is whether that ruling was clearly erroneous.

[8] At trial, Guzman initially testified that Los Duendes was performing frequently "[f]rom '74 till about '78 or nine," before clarifying that he was "mistaken" and that the band performed frequently "[f]rom '74 up to about '90 . . . '90-something."

[9] In so concluding, the district court also credited "Garcia's testimony that before this lawsuit Hacienda never saw Guzman perform or otherwise heard *Triste*," noting that Guzman proffered "no evidence at trial, direct or otherwise, that casts doubt on the veracity of [Garcia's] testimony."  *Guzman*, 2014 WL 6982331, at *7.  This is yet another credibility determination that greatly undercuts Guzman's access arguments on appeal.  *See, e.g.*,

No. 15-40297

The district court's rejection of Guzman's live-performance evidence was infused with credibility determinations that are entitled to great deference on appeal, as only the trial judge was positioned to observe the demeanor of Guzman and Sanchez and to adjudge the veracity of their testimony. *See Anderson*, 570 U.S. at 575–76; *Estate of Lisle*, 541 F.3d at 601. Because of this deference, and because Guzman has pointed to no evidence that calls the district court's credibility determinations into question, we cannot overturn the court's live-performance-access finding as clearly erroneous.

2.

Having failed to show that the district court's access finding was clearly erroneous, Guzman alternatively argues that the district court erred in finding that *Triste* and *Cartas* were not strikingly similar such that no access showing was required. This circuit has held that "a plaintiff may establish factual copying without any proof of access when the similarity between plaintiff's and defendant's works is sufficiently striking such that the trier of fact may be permitted to infer copying on that basis alone." *Positive Black Talk*, 394 F.3d at 371 n.10 (internal quotation marks and citation omitted). In order to show that two songs are strikingly similar, a plaintiff must demonstrate that the alleged "similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Selle v. Gibb*, 741 F.2d 896, 904 (7th Cir. 1984) (quotation marks and citation omitted),

---

*Anderson*, 470 U.S. at 575–76; *cf. McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994) ("[I]n order to determine that the appellees had access to the appellant's work, we would have to assume that the persons who created [the allegedly infringing work] lied about their lack of knowledge of the appellant and his [work]."); *Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 539 (S.D.N.Y. 2007) ("Courts have rejected efforts by plaintiffs to establish access in the face of . . . sworn testimony [that an alleged infringer has never heard of a work] unless there is probative evidence to the contrary.").

*cited favorably in Armour*, 512 F.3d at 152 n.3.  This requires that the "similarities . . . appear in a sufficiently unique or complex context," *see id.*, which is of particular importance "with respect to popular music, 'in which all songs are relatively short and tend to build on or repeat a basic theme.'" *Benson v. Coca-Cola Co.*, 795 F.2d 973, 975 n.2 (11th Cir. 1986) (per curiam) (quoting *Selle*, 741 F.2d at 905).

Guzman's sole striking similarity argument on appeal is that the district court erred by focusing on *Triste* and *Cartas* in their entirety rather than on their "virtually identical" opening lyrics.  This argument fails for several reasons.  Contrary to Guzman's assertions, the mere fact that the opening lyrics of *Triste* and *Cartas* (sixteen words in total) are nearly identical does not *per se* establish striking similarity.  *Cf. Selle*, 741 F.2d at 903 ("'Striking similarity' is not merely a function of the number of identical notes that appear in [two] compositions.").  Rather, for these lyrics, alone, to meet the striking similarity test, Guzman must have proffered evidence that they were sufficiently unique or complex so as to preclude all explanations other than copying.  *See Armour*, 512 F.3d at 152 n.3 (citing *Selle*, 741 F.2d at 904).  Guzman's trial evidence fails to satisfy this hallmark of the striking similarity analysis.

At trial, both parties' experts agreed that the opening lyrics of *Triste* and *Cartas*, though nearly identical, are set to different music in each song, and Hacienda's expert testified that many other songs expressed the same phrases, attitudes, and expressions encompassed in the opening lyrics, *i.e.*, "yo tengo mi poder" (I have in my possession); "love letter compassion;" "love letter forgiveness;" and "[y]ou're coming back begging, and you had your chance. How does it feel to be on the other side?"  Moreover, in a broader sense, each expert agreed that the alleged compositional similarities running between the

songs in their entirety, *i.e.*, their melodies, rhythmic patterns, lyrical themes, and instrumental accompaniment, were either common to the Tejano genre or common in other songs. *Cf. Watt v. Butler*, 744 F. Supp. 2d 1315, 1324 (N.D. Ga. 2010) (noting that the fact that two songs were from the same genre could "require[] that the Plaintiff offer more evidence of striking similarity"). Finally, each expert identified a number of differences in the music—*e.g.*, melodic contour, filler music, key, tempo, length, and chord structures—and lyrics of the two songs. Absent evidence of uniqueness or complexity, and in light of the expert testimony at trial describing differences in the lyrics and music of the songs, the district court's finding that *Cartas* and *Triste* are not strikingly similar was not clearly erroneous.

## B.

In his third argument, Guzman contends that the district court erred in declining to apply a novel "sliding scale" analysis that would have lowered his access burden.[10] This circuit has never expressly adopted the sliding scale analysis that Guzman advances on appeal, though we have previously noted that such an analysis finds support in other circuits. *See Positive Black Talk*, 394 F.3d at 371–72 (citing *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 56 (2d Cir. 2003), for the proposition that "[t]here is an inverse relationship between

---

[10] Many of Guzman's appellate arguments attack the district court's reasons for declining to apply a sliding scale analysis, namely the district court's "creator/recorder" distinction. *See Guzman*, 2014 WL 6982331, at *5 & n.8 ("Th[e] sliding scale makes sense when the accused infringer created the work, the idea being that it is too coincidental that two creators would have had the same spark of ingenuity. But it does not make sense to relax the access requirement based on a strong similarity in a case like this one, in which the defendants are the record company and its managers who recorded the song and not anyone who wrote it."). It is axiomatic that an appeal is from the judgment not the reasons, *see, e.g.*, *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603–04 (5th Cir. 2004), and, here, we affirm the judgment of the district court without pausing to consider the creator/recorder distinction drawn below.

access and . . . similarity such that the stronger the proof of similarity, the less the proof of access is required"). Similar to the situation in *Positive Black Talk*, we are not convinced that the circumstances of this case provide an appropriate occasion to adopt the sliding scale analysis as the law of this circuit.

As discussed herein, credibility determinations and a lack of clear trial testimony were major portions of the district court's assessment of this trial. There is no indication that the court failed to consider any relevant testimony or evidence in concluding that the chances were "purely speculative" that Garcia or anyone at Hacienda heard *Triste* on the radio, and the court's credibility determinations made en route to rejecting Guzman's live-performance evidence are virtually unassailable on appeal. Indeed, Guzman's challenges to the district court's factual findings (and the credibility determinations subsumed therein) each fall short, and there is no indication that the district court would have weighed the evidence or adjudged the credibility of witnesses differently under a new, albeit more lenient, legal test. Under these circumstances, we have no occasion to adopt and fine-tune the sliding scale analysis as the law of this circuit, and we reject Guzman's unconvincing invitation to do so.

C.

On appeal, Guzman advances no legal argument in support of his separate DMCA claim, instead challenging only the district court's access finding and requesting a remand. Guzman's failure to brief and argue his DMCA claim before this court constitutes waiver of that claim on appeal. *See, e.g., Raj v. La. State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013). In any event, because we affirm the district court's access finding, and absent any legal argument from Guzman on the issue, we affirm the district court's judgment in favor of Hacienda as to Guzman's claim under § 1202(a) of the DMCA.

No. 15-40297

IV.

Guzman had a full opportunity to present his case to the district court, including evidence of *Triste*'s popularity and circulation in Corpus Christi. The district court rejected that evidence based, in large part, on credibility determinations and a lack of clear trial testimony. We decline to second-guess the district court under the clearly erroneous standard of review, and we decline to establish a new sliding scale standard for showing access in copyright cases. Accordingly, we AFFIRM.