# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 19, 2024

Lyle W. Cayce
Clerk

———————

No. 23-50254

———————

Kirk Johnston,

*Plaintiff—Appellant*,

*versus*

Chad Kroeger; Michael Kroeger; Ryan Peake; Daniel Adair; Roadrunner Records, Incorporated; Warner/Chappell Music, Incorporated,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-497

———————————————————

Before Jones, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:*

Plaintiff Kirk Johnston brought this copyright infringement suit alleging a popular band copied the musical composition of his song. Finding Johnston failed to produce sufficient evidence of copying, the district court

———————————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50254

granted summary judgment to the defendants. For the reasons set forth below, we AFFIRM.

## I.    Background

Johnston is a musician and songwriter who has been a member of a band called Snowblind since 1997. Defendants Chad Kroeger, Michael Kroeger, Ryan Peake, and Daniel Adair are members of the band Nickelback. At all relevant times, Defendant Roadrunner Records, Inc. was Nickelback's record label and Defendant Warner Chappell Music, Inc. was Nickelback's music publishing company.

In 2001, Johnston wrote and created the musical composition for the song *Rock Star*. Johnston holds a federal copyright registration for this song. Four years later, Nickelback released a song with a similar title called *Rockstar*. Johnston alleges Nickelback copied the original musical composition of his song. In 2020, Johnston initiated this suit for copyright infringement.[1] Nickelback moved for summary judgment, and the district court referred the motion to a magistrate judge. The magistrate judge recommended summary judgment in favor of Nickelback because Johnston had not raised a genuine dispute of material fact as to factual copying; indeed, the two songs did not sound alike. Over Johnston's objection, the district court adopted the magistrate judge's recommendation and dismissed Johnston's claim. Johnston timely appealed.

---

[1] Johnston claims he was unaware of Nickelback's song until 2018. While the court must accept that statement at the summary judgment stage, it is an odd contention considering how popular the Nickelback song was.

2

No. 23-50254

## II.    Jurisdiction & Standard of Review

The district court properly exercised jurisdiction over Johnston's claim under 28 U.S.C. §§ 1331 and 1338(a).  We have appellate jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291.

We review a motion for summary judgment de novo, applying the same standards as the district court.  *Voinche v. Fed. Bureau of Investigation*, 999 F.2d 962, 963 (5th Cir. 1993) (per curiam).  In conducting this review, we "construe all facts and inferences in the light most favorable to the nonmovant."  *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020).  Summary judgment is proper where there are no genuine disputes of material fact and the movant is entitled to prevail as a matter of law.  *Alkhawaldeh v. Dow Chem. Co.,* 851 F.3d 422, 426 (5th Cir. 2017) (citing Fed. R. Civ. P. 56(a)).

## III.    Discussion

To establish a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity."  *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (per curiam).  At issue here is the element of factual copying, which a plaintiff may show with direct or circumstantial evidence.  *See id.*  When, as here, a plaintiff lacks direct evidence of copying, factual copying may be inferred from "either a combination of access and probative similarity or, absent proof of access, striking similarity."  *Batiste*, 976 F.3d at 502.  The district court held that Johnston failed to raise a genuine dispute of material fact as to access or striking similarity.  We agree.

### A. Access

As stated above, the first way a plaintiff may establish factual copying is with "a combination of access and probative similarity."  *Id.*  At the first step, the plaintiff must offer "proof that the defendant had access to the

3

copyrighted work prior to creation of the infringing work." *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001). Next, the plaintiff must show that the works, "when compared as a whole, are adequately similar to establish appropriation." *Id.* at 397.

"To establish access, a plaintiff must prove that the person who created the allegedly infringing work had a reasonable opportunity to view [or hear] the copyrighted work before creating the infringing work." *Armour*, 512 F.3d at 152–53 (internal quotation marks and citation omitted). A "bare possibility" of access is insufficient, as is mere "speculation or conjecture." *Peel & Co.*, 238 F.3d at 394–95. Indeed, to survive summary judgment, "the plaintiff must present evidence that is *significantly probative* of a *reasonable opportunity* for access." *Batiste*, 976 F.3d at 503 (internal quotation marks and citation omitted).

Johnston argues the following evidence shows Nickelback had a reasonable opportunity to access his work: (1) executives from Roadrunner's parent company, Universal Music, likely attended Snowblind's Continental Club show; (2) Nickelback's management group likely attended Snowblind's show at the Whisky-a-Go-Go;[2] (3) Nickelback and Snowblind were "moving in relatively the same circles" when they were searching for record label deals; (4) Nickelback routinely used music ideas from third-party bands; and (5) Johnston made significant efforts to publicize his music in the early 2000s. But inferring access from this evidence would require "leaps of logic" that are not supported by the record. *See Armour*, 512 F.3d at 155. A jury would

---

[2] The only evidence Johnston identifies for the assertion that certain executives attended Snowblind's shows is that they frequently attend shows at the Continental Club and the Whisky-a-Go-Go. Johnston has not presented evidence that any of these executives actually attended one of Snowblind's performances. Indeed, the record establishes only that Johnston's friend, an intern at Universal/Motown Records, attended a Snowblind show with one of his colleagues in marketing.

have to infer that the executives Johnston named actually attended Snowblind's shows or received one of his demo CDs, and that these executives then showed the song to Nickelback. This "chain of hypothetical transmittals is insufficient to infer access," *id.* at 153 (quotation omitted), especially in the face of testimony from Nickelback members and relevant executives that they had never heard of Johnston's song, *see Batiste*, 976 F.3d at 504 (considering defendants' sworn testimony that they had never heard of plaintiff or his music). Because Johnston's contentions amount to mere speculation, he has failed to raise a genuine fact issue as to whether Nickelback had access to his work.

## B. Striking Similarity

Without proof of access, Johnston must establish factual copying by showing "striking similarity" between Nickelback's song and his. *See id.* To meet this burden, he must "demonstrate that the alleged similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1039 (5th Cir. 2015) (internal quotation marks and citation omitted). The similarities must also "appear in a sufficiently unique or complex context . . . which is of particular importance with respect to popular music, in which all songs are relatively short and tend to build on or repeat a basic theme." *Id.* (internal quotation marks and citation omitted). Johnston asserts several challenges to the district court's conclusion that he did not raise a material fact issue as to striking similarity. None is availing.

As an initial matter, Johnston contends the district court applied the improper legal standard. First, he argues that the court erred by not applying the "more discerning ordinary observer test." But that test applies in certain circumstances under the substantial similarity analysis—not striking

similarity. *See Hamil Am., Inc. v. GFI*, 193 F.3d 92, 101 (2d Cir. 1999) ("[T]he 'more discerning' ordinary observer standard . . . requires the court to eliminate the unprotectible elements from its consideration and to ask whether the protectible elements, standing alone, are substantially similar.").[3] The substantial similarity analysis applies only after a plaintiff establishes factual copying and is thus irrelevant here. *See Batiste*, 976 F.3d at 506.

Second, Johnston asserts the district court erred by considering all versions of the songs rather than the "stripped down" versions. However, Johnston provides no support for this argument, citing only to cases that apply his argued standard to the substantial similarity analysis. *See, e.g.*, *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 367 (5th Cir. 2004) (upholding jury instruction that "correctly indicate[d] that the jury should compare the parts of the two songs that are similar in determining substantial similarity"), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). The district court did not err by considering all versions of the songs in the record.

Additionally, Johnston contends the works at issue are strikingly similar because they have similar hooks and lyrics. But he has not raised a material fact issue on whether these alleged similarities are so unique that they "can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Guzman*, 808 F.3d at 1039.

---

[3] Johnston argues that the "more discerning observer" test should apply to the striking similarity analysis because "factual copying cannot be sustained on the basis of unprotectable elements." But we have previously held that a plaintiff can show factual copying in part by pointing to "any similarities between the two works, even as to unprotectable elements." *Batiste*, 976 F.3d at 502 (internal quotation marks and citation omitted). Thus, the "more discerning observer" test is inapplicable to striking similarity.

Johnston's expert first opines that the hooks of the songs are strikingly similar. He states that there are "clear lyrical similarities" between the two hooks: "Gonna be a rock star someday" in Johnston's work, and "Hey, hey, I wanna be a rockstar" in Nickelback's work. Johnston's expert also contends that there are musical similarities "between the two hooks." However, even under Johnston's expert's analysis, the melodic and harmonic similarities between the two hooks are not so great as to preclude all explanations but copying. Further, Johnston fails to raise a material fact issue on whether these alleged similarities arise in a "unique or complex context." *See id.* (quotation omitted). As the summary judgment record reflects, several other Nickelback songs and other songs in the rock genre share the same similarities. *See id.* at 1040 (affirming finding of no striking similarity because the alleged similarities were "either common to the Tejano genre or common in other songs").

Johnston's argument that the rest of the songs' lyrics create striking similarity also fails. Johnston's expert categorizes the lyrics into common themes such as "making lots of money," "connections to famous people," and "references to sports." But these broad categories are mere clichés of being a rockstar that are not unique to the rock genre. Singing about being a rockstar is not limited to Johnston. Further, organizing the lyrics into these categories overstates their similarities. For example, Johnston contends both songs lyricize about sports. Well, Johnston's work includes the phrase "Might buy the Cowboys and that's how I'll spend my Sundays," but Nickelback's work includes the phrases "And a bathroom I can play baseball in" and "It's like the bottom of the ninth and I'm never gonna win." These lyrics reference different sports in different contexts, and do not approach the threshold of striking similarity. No reasonable juror would think that Nickelback could have produced its lyric about baseball only by copying Johnston's lyric about football. Indeed, we have previously held that two

songs were not strikingly similar despite "nearly identical" opening lyrics. *Id.* Accordingly, Johnston has not raised a fact issue as to striking similarity. Put another way, these two songs are simply *not* sufficiently similar.

In sum, because he has not shown factual copying with either a combination of access and probative similarity, or striking similarity, Johnston's copyright infringement claim fails.

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment to the defendants.[4]

---

[4] Because summary judgment for the defendants is proper, we do not reach the other issues raised on appeal.