# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 18, 2023

Lyle W. Cayce
Clerk

————————

No. 22-40440

————————

Shenzen Synergy Digital Company, Limited,

*Plaintiff—Appellee*,

*versus*

Mingtel, Incorporated,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:19-CV-216

———————————————————————

Before Wiener, Southwick, and Duncan, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

Mingtel, a Texas-based company, ordered two batches of computer tablets from Shenzen Synergy Digital, a Chinese company, hoping to resell them through the Home Shopping Network ("HSN"). The first batch bombed on HSN, with customers complaining about slow speeds and flawed screens. Mingtel then rejected the second batch out of hand. Synergy sued for breach of contract; Mingtel countersued, alleging Synergy provided nonconforming goods. The district court sided with Synergy. We affirm.

No. 22-40440

## I.

Synergy is a Chinese manufacturer, distributor, and exporter of "Tier 2" computer tablets and other electronics.[1] Mingtel is a Texas importer and distributor of electronics, including computer tablets. The companies successfully contracted together for three years before the transactions at issue here. Mingtel would define specifications for computer tablets, and Synergy would fulfill them.

In the summer of 2017, Mingtel contracted with HSN to sell 60,000–70,000 tablets on HSN's website. Mingtel sent two purchase orders to Synergy on August 28, 2017: Order MT0559 ("Order 59") and Order MT0560 ("Order 60"). Order 59 was for 10,000 Model G1058S tablets—a 32GB model. Each tablet cost $76.32 for a total of $763,200. Order 60 was for 10,000 Model G1058A tablets—an otherwise identical 16GB model. Each tablet cost $73.03 for a total of $730,300. Mingtel paid a small deposit on both orders.

In late October 2017, Synergy notified Mingtel that Order 60 was ready. Under the parties' agreement, Mingtel was responsible for picking up the tablets and handling shipping from Synergy's factory in China. Mingtel inspectors examined some samples and approved the batch for shipment. Both parties knew that certain features, like the WiFi and SIM cards, were built for use in the United States and would not function in China. Even so, Mingtel paid Synergy in full and shipped the tablets directly to HSN's warehouse.

---

[1] The market for computer tablets consists of different "tiers." "Tier 1" tablets, for example, include those made by Apple and Samsung. The differences between "Tier 1" and "Tier 2" tablets include the name brand and user experience.

After some tablets were sold through the HSN website, customers complained about slow processing speeds and screen issues. But in communications with HSN, Mingtel representatives explained that they were "having difficulty replicating the issues," that customer complaints represented "not a tablet issue [but] a WiFi or network issue," and that the "tablet [was] not slow at all." Nevertheless, only 2,700 tablets were sold and 37% of those were returned.

Later, in early 2018, Synergy informed Mingtel that 5,000 tablets of Order 59 were ready. Given the problems with Order 60, Mingtel refused to accept Order 59 and declined to pay the balance on the order. To recoup some of its losses, Synergy resold the 5,000 tablets at a discount.

In March 2019, Synergy sued Mingtel for breaching their contract by refusing to accept or pay for Order 59. Mingtel countersued, arguing that Synergy provided nonconforming goods. After a bench trial, the district court found Mingtel liable to Synergy. Mingtel now appeals.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (quoting *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011)). This case is governed by the U.N. Convention on Contracts for the International Sale of Goods ("CISG"). *See* CISG Art. 1(1)(a) ("This Convention applies to contracts of sale of goods between parties whose places of business are in different States . . . [w]hen the States are Contracting States."); *see also BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador,* 332 F.3d 333, 337 (5th Cir. 2003) ("As incorporated federal law, the CISG governs the dispute so long as the parties have not elected to exclude its application.").

## III.

Mingtel argues that Synergy breached Order 60 by providing nonconforming goods. We evaluate that claim by looking to the CISG, which provides the following relevant principles.

The CISG defines a fundamental breach of contract as one that "results in such detriment to the other party as substantially to deprive him of what he is entitled to expect under the contract, unless the party in breach did not foresee and a reasonable person of the same kind in the same circumstances would not have foreseen such a result." CISG art. 25. It explains further:

> (1) The seller must deliver goods which are of the quantity, quality and description required by the contract and which are contained or packaged in the manner required by the contract.
>
> (2) Except where the parties have agreed otherwise, the goods do not conform with the contract unless they:
>
>> (a) are fit for the purposes for which goods of the same description would ordinarily be used;
>>
>> (b) are fit for any particular purpose expressly or impliedly made known to the seller at the time of the conclusion of the contract . . .
>>
>> (c) possess the qualities of goods which the seller has held out to the buyer as a sample or model . . .

CISG art. 35. Moreover, the CISG placed on Mingtel the burden of proving that the tablets were defective at the time of transfer. *See Chi. Prime Packers, Inc. v. Northam Food Trading Co.*, 408 F.3d 894, 898 (7th Cir. 2005); *Hefei Ziking Steel Pipe Co. v. Meever & Meever*, No. 4:20-CV-00425, 2021 WL 4267162, at *6 (S.D. Tex., Sept. 20, 2021).

The district court concluded that Mingtel failed to satisfy this burden because its "evidence on the matter was sparse at trial." That evidence

included: the fact that 37% of the tablets sold by HSN were returned, Mingtel president James Hu's testimony that the tablets took about 15–20 seconds longer to boot up than similar tablets, and Hu's testimony that tests run on the tablet's WiFi without SIM cards showed that slow processing speeds were the result of a problem with the tablet itself. Lacking, however, was any relevant evidence about how fast the WiFi should ordinarily be and any quantitative tests comparing the tablets' processing speed to other similar tablets.

By contrast, Synergy produced testimony from its president, David Chan, that Mingtel defined the tablets' exact specifications, selected the components, and approved the golden sample of the tablets. Moreover, emails from Mingtel to HSN acknowledged that Mingtel's internal tests suggested that the tablet was not the issue, but that the slow speed was "a WiFi or network issue." Even Mingtel's president himself emailed HSN that "[t]his tablet is not slow at all." Synergy also argued that the 37% return rate does not mean that the tablets were nonconforming; customers may have not liked the tablets' features or colors.

In light of Mingtel's limited evidence, which was rebutted by Synergy, the district court concluded that Mingtel failed to satisfy its burden to prove that Synergy provided nonconforming goods. On appeal, Mingtel largely seeks to relitigate the district court's underlying factual findings—findings we review for clear error. We find no error, clear or otherwise, and so decline to disturb the district court's judgment.

And even if the tablets were nonconforming goods, we agree with the district court that Mingtel did not timely examine them or notify Synergy of any problems. Under the CISG, a "buyer loses the right to rely on a lack of conformity of the goods if he does not give notice to the seller specifying the nature of the lack of conformity within a reasonable time after he has

discovered it or ought to have discovered it." CISG art. 39(1). Additionally, the CISG requires buyers to "examine the goods, or cause them to be examined, within as short a period as is practicable in the circumstances." CISG art. 38(1). What constitutes a "reasonable time" for a notice of nonconformity under Article 39 is evaluated by reference to the duty to examine the goods in "as short a period as is practicable" under Article 38. *See, e.g.*, *Chi. Prime Packers, Inc. v. Northam Food Trading Co.*, 320 F. Supp. 2d 702, 714 (N.D. Ill. 2004), *aff'd*, 408 F.3d 894 (7th Cir. 2005).

The district court found Mingtel did not examine the tablets as soon as practicable because it failed to inspect them when they arrived the United States. True, Mingtel inspected the tablets at Synergy's factory in China, but it knew that the WiFi and SIM cards could not be tested there. Instead of testing those capabilities upon the tablets' arrival in the United States, Mingtel shipped them directly to HSN's warehouse and examined them only after they were sold and returned by customers. We agree with the district court that, given those facts, Mingtel did not timely inspect the tablets. It follows that Mingtel did not provide Synergy with a notice of nonconformity within a reasonable time.

Having concluded that the district court properly found that Synergy did not breach Order 60, we now evaluate whether Mingtel breached Order 59. It is true that, under the CISG, a party may sometimes be justified in suspending performance. *See* CISG art. 71(1) ("A party may suspend the performance of his obligations if, after the conclusion of the contract, it becomes apparent that the other party will not perform a substantial part of his obligations as a result of: . . . (b) his conduct in preparing to perform or in performing the contract."); *id.* art. 72(1) ("If prior to the date for performance of the contract it is clear that one of the parties will commit a fundamental breach of contract, the other party may declare the contract avoided."). But because Synergy did not breach Order 60, Mingtel was not

No. 22-40440

justified in its anticipatory breach of Order 59. Instead, Mingtel was obligated to pay for the tablets and take delivery of them. Because it failed to do so, the district court properly found Mingtel liable.[2]

## IV.

The district court's judgment is AFFIRMED.

---

[2] Mingtel raises a few other matters on appeal. It argues that although Order 59 was originally for 10,000 tablets, it was later verbally reduced to 5,000 tablets. And it argues that the district court improperly calculated damages because Synergy resold the tablets from Order 59 for more than what it claimed to have sold them for. But the district court's factual findings on both these issues largely involved weighing witnesses' competing testimony. Those are credibility determinations that we have no reason to second-guess. *See Matter of Complaint of Luhr Bros., Inc.*, 157 F.3d 333, 337 (5th Cir. 1998) ("[D]ue regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985))).