# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2025

Lyle W. Cayce
Clerk

No. 22-40072

Booker T. Huffman,

*Plaintiff—Appellee*,

*versus*

Activision Publishing, Incorporated; Activision Blizzard, Incorporated; Major League Gaming Corporation; Treyarch Corporation,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:19-CV-50

Before Elrod, *Chief Judge*, and Richman and Oldham, *Circuit Judges*.

Priscilla Richman, *Circuit Judge*:*

Activision Publishing, Inc., Activision Blizzard, Inc., Major League Gaming Corporation, and Treyarch Corporation (collectively Activision) appeal a district court order denying attorney's fees after they prevailed at trial on a copyright infringement suit. The district court denied fees largely because of its determination that the lawsuit was not objectively

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

unreasonable.  Because the district court did not abuse its discretion, we affirm.

## I

Booker T. Huffman, a retired wrestler, hired Travis Huffman (no relation) and his company to create a comic book featuring G.I. Bro, a character based on Booker Huffman's wrestling persona.  Together, they produced and printed fewer than 2,000 copies of Booker's comic books, and it is unclear how many of these they sold.  Booker would "dress up in a camouflage shirt, boots, and . . . recreate the G.I. Bro image" and attend Comic-Cons, WrestleCons, and wrestling events to promote the comic book. He would bring various images and posters with him, and in 2016, he hired an artist, Erwin Arroza, to create a G.I. Bro image for promotional posters to hand out and sell.  The poster was created based on Huffman's physical appearance and the comic books.  Travis paid Arroza to make the poster, Travis was reimbursed by Booker, and the copyright was registered under Booker's name.

For the release of *Call of Duty: Black Ops IV*, Activision updated its Prophet character, which first debuted in *Black Ops III*.  Activision hired outside contractor Karakter Design Studio, and the companies went through ten well-documented design rounds creating concept art for the character.  A legal checklist for the concept art marked that it had elements of both a "paint-over" and a "composite," the latter of which is defined as "a technique that utilizes various images found on the internet and/or other places and using those elements either in its entirety or some portions of those images and creating a Frankenstein version of an image."  Activision then cast a model based on the concept art and conducted a photoshoot—but no image from the photoshoot was identical to the eventual Prophet image. That image was used for limited secondary marketing on several billboards

No. 22-40072

and in several optional game packages. In the images below, Huffman's G.I. Bro is on the left and Activision's Prophet is on the right.

 

The parties disagree over whether anyone affiliated with Activision ever saw the image on the poster. An Activision employee, Carolyn Wang, testified that she attended New York Comic-Con one year and San Diego Comic-Con every year between 2012 and 2018, and would observe panels and walk the show floor while there. While the poster did not exist in 2015, Huffman did attend the 2015 San Diego Comic-Con as well, with examples of the first comic book, which included the following image.



No. 22-40072

Travis also posted the Arroza poster on his social media, and Booker did a collectible show in 2016 thirty minutes from Activision headquarters.

Huffman sued Activision for copyright infringement, and, after receiving a letter detailing the process Activision used to create the Prophet image, added a Digital Millennium Copyright Act (DMCA) claim under 17 U.S.C. § 1202 for removal of Copyright Management Information (CMI) from copyrighted works. After Activision's two motions to dismiss were denied, Activision filed three motions for summary judgment. These motions argued that: "(i) . . . [Huffman] lacked standing to sue and that there was no evidence to support his claim of copyright infringement; (ii) . . . there was no evidence that [Activision] had violated section 1202 of the DMCA; and (iii) . . . there was no evidence of a nexus between the alleged infringement and the profits [Huffman] sought."

For the first motion, the court, adopting the report of the magistrate judge, found a genuine issue of material fact on whether Huffman assigned the copyright, whether defendants accessed the poster, and whether the images were strikingly similar. The second motion was denied as to DMCA § 1202(a) and granted as to § 1202(b). Huffman claimed that under (a), Activision knowingly provided false CMI when distributing the Prophet image and that under (b), Activision removed Huffman's CMI from the Arroza poster when making the Prophet image. To violate (a), Activision claimed it would have to distribute Huffman's poster (the "original work") with false CMI, while Huffman argued that adding Activision's own CMI to the Prophet when they knew it was a copy is enough. The district court reasoned that there was no original work requirement in the statute, which the court considered unambiguous, but concluded there was a fact question as to whether Activision violated that statute and whether CMI on a CD sold in a box with the image qualified. As for the third motion, concerning a nexus between the alleged infringement and profits Huffman sought, the

4

No. 22-40072

district court found there was a question of fact as to whether the *Black Ops IV* sales could be attributed to the Prophet image used in marketing.

Before trial, Huffman's counsel filed a separate suit on behalf of a different plaintiff against Activision that Activision claims sprang from discovery in this case. In the present case, after a four-day jury trial and approximately two to three hours of jury deliberations, a verdict was reached in favor of Activision. Activision moved for costs and its attorney's fees in defending against Huffman's failed claims. Huffman filed a response, Activision filed a reply, and the district court held a hearing. The district court then requested and received supplemental briefing on the costs motion. The district court denied the motion for attorney's fees and awarded part of the requested costs to Activision totaling $138,704.39. Activision filed this appeal from the denial of attorney's fees.

## II

A court may award a prevailing party in a copyright dispute reasonable attorney's fees under 17 U.S.C. § 505.[1] A district court's refusal to do so is reviewed for "an abuse of discretion."[2] "A trial court abuses its discretion in awarding or refusing to award attorney's fees when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[3] In *Fogerty v. Fantasy, Inc.*,[4] the Supreme Court provided a "nonexclusive" list of factors to consider when awarding fees:

---

[1] *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 510 (5th Cir. 2012) (citing 17 U.S.C. § 505).

[2] *Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 373 (5th Cir. 2020) (quoting *Virgin Recs. Am., Inc. v. Thompson*, 512 F.3d 724, 725 (5th Cir. 2008) (per curiam)).

[3] *Id.* (quoting *Virgin Recs.*, 512 F.3d at 725).

[4] 510 U.S. 517 (1994).

No. 22-40072

"frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[5] The Court clarified in *Kirtsaeng v. John Wiley & Sons, Inc.*[6] that while the "objective reasonableness" factor should be given "substantial weight," it is not a "controlling" factor.[7] A district court has "broad discretion" to consider a range of factors and "deny fees even though the losing party made unreasonable" arguments.[8]

## III

The district court here conducted the type of analysis we have consistently found to be sufficient. The court offered six pages of analysis correctly identifying the *Fogerty* factors and explaining both that the objective reasonableness factor receives "substantial weight" and that its conclusion on that factor weighed in favor of Huffman. The court pointed out that frivolousness was not argued, that Activision's "arguments for compensation and deterrence are underpinned by their objective unreasonableness arguments," and that Activision's arguments on motivation "are also at least partially supported by similar arguments." This surpasses the level of analysis we have found to sustain a district court's decision under an abuse of discretion standard.

In one instance, after setting forth the relevant standard, the entirety of the district court's analysis was:

---

[5] *Id.* at 534 n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).

[6] 579 U.S. 197 (2016).

[7] *Id.* at 207-08.

[8] *Id.* at 208-09.

6

> In addition to presiding over the [five] day trial of this matter, the [c]ourt considered several complex and potentially dispositive pre-trial motions. Having gained an understanding of the applicable law and a thorough appreciation of PBT's claims, the [c]ourt does not feel that this litigation was frivolous, objectively unreasonable, or without proper motive. PBT had a renowned music expert to support its position even though the jury gave greater weight to the testimony of Defendants' expert. The [c]ourt is convinced that PBT's claims were brought in good faith. Therefore, an award of attorney's fees would not serve to deter future meritless litigation brought by other parties.[9]

We affirmed.[10] We noted that there was "reasonable explanation" for the objective unreasonableness finding, explaining that despite the district court noting in its denial of summary judgment that it doubted the plaintiff would succeed at trial on whether its phrase "was protectable under copyright laws, the court later determined, after adjudicating a number of substantive motions and hearing the full trial on the merits, that PBT's claim was not objectively unreasonable and that it did not warrant attorney's fees."[11]

Likewise, in *Creations Unlimited, Inc. v. McCain*,[12] the district court, after a paragraph setting forth the *Fogerty* factors, only stated:

> The Court finds, from its review of its Opinion and Order of June 1, 1995, and of the briefs of both parties in support of and in response to the summary judgment motion, that Plaintiffs'

---

[9] *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 382 (5th Cir. 2004) (alteration in original), *abrogated on other grounds by*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

[10] *Id.* at 383.

[11] *Id.* at 382 & n.23.

[12] 112 F.3d 814 (5th Cir. 1997) (per curiam), *abrogated on other grounds by*, *Reed*, 559 U.S. 154 (2010).

challenge to Defendant's designs, though ultimately not successful, was neither frivolous nor objectively unreasonable, either in its factual allegations or its legal undergirding. Likewise, though it is clear to this Court that at least some personal animosity existed between the former business partners who became parties to this action, the Court does not find pernicious behavior indicating inappropriate motivation for the bringing of this lawsuit. Nor does the Court find in this case any particular need "to advance considerations of compensation and deterrence." Finally, recognizing that the *Lieb* factors are nonexclusive, and "that others may present themselves in specific situations," *id.*, the Court has considered the arguments put forth by the Defendants in their memorandum brief, pursuant to the twelve factor analysis provided in the local rules. The Court holds that an award of attorney's fees and costs is not appropriate in this case.[13]

We affirmed.[14] We did so despite the fact that the district court said it considered the defendants' arguments without specifying what those arguments were or why it did not find them persuasive.[15] We specifically noted that the district "court properly applied the *Lieb* factors and also 'considered the arguments put forth by the [Defendants] in their memorandum brief' before denying the [Defendants'] motion."[16]

Finally, we have affirmed on even less analysis when upholding a fee award for less than what was sought. There, the district court only said:

> [T]he Court finds that (1) Array is the prevailing party in an action under the Copyright Act, 17 U.S.C. § 505; (2) the claims

---

[13] *Creations Unlimited, Inc. v. McCain*, 889 F. Supp. 952, 954–55 (S.D. Miss. 1995), *aff'd*, 112 F.3d 814 (5th Cir. 1997).

[14] *Creations Unlimited*, 112 F.3d at 817.

[15] *Id.*

[16] *Id.*

in this case were inextricably intertwined with the counterclaims; (3) the services provided Array's attorneys were necessary and the fees as awarded herein were reasonable; (4) awarding attorneys' fees would promote the purposes of the Copyright Act; (5) in consideration of *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319 (5th Cir. 1998) and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the reasonable fee for Array's defense of the copyright claims which the Court believes should be imposed against Plaintiff is $50,000.[17]

We affirmed.[18]  We explained that the court "explicitly stated that its award promotes the purposes of the Copyright Act and is reasonable.  By necessary inference, the higher amount sought by Array was unreasonable."[19]  The Fifth Circuit has repeatedly upheld district court decisions—both to deny and to grant attorney's fees—based on substantially less analysis than the six pages of careful explanation by the district court here.[20]

---

[17] *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 578 (5th Cir. 2003).

[18] *Id.*

[19] *Id.*

[20] *See also Hunn v. Dan Wilson Homes, Inc.*, No. 5:12-CV-081, 2014 WL 11310154, at *1-2 (N.D. Tex. Mar. 5, 2014), *aff'd*, 789 F.3d 573 (5th Cir. 2015) (Our court affirmed an award of fees when the only analysis the district court provided was: "The Court first makes a finding that the Defendants are the prevailing party in their defense of the copyright-infringement claims brought against them by the Plaintiff.  As such, the Court finds that each Defendant should be awarded attorneys' fees under the Copyright Act.  The Court further finds that under the circumstances and facts of this case equity favors the award of attorneys' fees to the Defendants as the prevailing party against Plaintiff's copyright-infringement claims. . . . The Court finds that $34,545.50 is a reasonable, necessary, and just award of attorneys' fees to Defendant Lack after considering the arguments discussed in the parties' briefs and each of the factors found in *Johnson v. Georgia Highway, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  The Court makes these

Activision argues that the district court abused its discretion by ignoring the "rule rather than the exception" language the Fifth Circuit regularly includes. We have explained many times that "an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely."[21] However, the Supreme Court has "reject[ed]" the argument that courts should "award[] attorney's fees as a matter of course, absent exceptional circumstances."[22] There is no "automatic recovery of attorney's fees by the prevailing party."[23] Especially in light of this guidance, and the fact that the district court did say both that a fee award in copyright infringement cases "is common" and that "[a]pplication of § 505 usually results in an award of costs to the prevailing party," the district court did not apply an erroneous view of the law.

We have previously found no abuse of discretion when district courts did not include the rule rather than the exception language. In *Hunn v. Dan Wilson Homes, Inc.*,[24] we found no abuse of discretion despite the fact that the

---

findings after carefully considering the parties' arguments, attached documents and affidavits, and claims and defenses raised by each party. The Court finds that there were aspects of the copyright-infringement defense by the Defendants that were inextricably intertwined with other claims and issues of the case. The Court applied each of the factors contained in *Johnson v. Georgia Highway, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974), and determines that the Wilson Defendants are entitled to an award of attorneys' fees in the amount of $148,692.20 and Defendant Lack is entitled to an award of attorneys' fees in the amount of $34,545.50.").

[21] *Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 386 (5th Cir. 2020) (quoting *Virgin Recs. Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008) (per curiam)); *see also Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 326 (5th Cir. 2022).

[22] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994).

[23] *Id.* at 534.

[24] 789 F.3d 573 (5th Cir. 2015).

No. 22-40072

district court neither included that language nor applied the *Fogerty* factors.[25] We cited a decision upholding an award of attorney's fees to a prevailing party even though the district did not apply the *Fogerty* factors.[26] In another unpublished case, *Sahuc v. Mohiuddin*,[27] we found no abuse of discretion although the district court denied fees without including the rule rather than exception language—or anything along those lines.[28]

## IV

Here, the district court's careful analysis of objective reasonableness was more than sufficient. As discussed in Part III, the district court not only conducted the same type of analysis we have frequently upheld by stating its conclusions based on the parties' arguments, but it also did substantially more. The district court noted that many of the defendants' dispositive pretrial motions were denied and that those motions hinged on unsettled law. Each of those was just one aspect of its objective unreasonableness analysis, which was just one aspect of its overall conclusion on attorney's fees.

The district court explained that Huffman's "claims involve[d] multiple areas of unsettled law, and the outcome was by no means determinable ex ante."[29] The point is not that the district court conclusively

---

[25] *Hunn v. Dan Wilson Homes, Inc.*, No. 5:12-CV-081, 2014 WL 11310154, at *1-2 (N.D. Tex. Mar. 5, 2014) (citing, as the only authority for denying fees, *Johnson v. Georgia Highway, Inc.*, 488 F.2d 714 (5th Cir. 1974)), *aff'd*, 789 F.3d 573 (5th Cir. 2015).

[26] *Hunn*, 789 F.3d at 589 (citing *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998), *abrogated by*, *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016)).

[27] 166 F. App'x 157 (5th Cir. 2006) (per curiam).

[28] *Sahuc v. Tucker*, No. 02-3759, 2004 WL 722431, at *1 (E.D. La. Mar. 30, 2004), *aff'd sub nom.*, *Sahuc v. Mohiuddin*, 166 F. App'x 157 (5th Cir. 2006) (per curiam).

[29] *See Lennar Homes of Tex. Sales & Mktg, Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 948 (S.D. Tex. 2015).

resolved areas of unsettled law; rather, the point is that if the law was unclear, it could not have clearly indicated the claims were unreasonable at the time Huffman brought suit.  Activision argues that there is only one case in this circuit in which a district court relied on the presence of unsettled law to deny attorney's fees[30] and that *Fogerty* cautions the opposite—resolving unsettled law is a reason *to* award attorney's fees because "it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible."[31] However, the Supreme Court's consistent guidance and our precedent has established that the district court has discretion over how to evaluate factors and it is not required to follow any precise formula or rote recitation.[32]  That is how, in its discretion, this district court decided to evaluate whether the claims were objectively unreasonable.

The district court's focus on prior motion practice, meanwhile, reflects Activision's own analysis relying so heavily on the claims being unreasonable before trial.  As the district court explained, Activision's motion centers around the fact that Huffman should have known his arguments were not reasonable by May 2020, which is belied by "the fact that the Court considered and denied several of Defendants' dispositive motions—among other motions—as late as May 2021."

Analyzing objective unreasonableness necessarily calls for some consideration of the merits.  However, it does not require us to redo the

---

[30] *See id.*

[31] *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

[32] *Id.* at 534 & n.19; *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 203 (2016); *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 589 (5th Cir. 2015) ("Although these factors are useful, we have 'rejected the idea that district courts are bound to apply verbatim the [*Fogerty*] factors.'" (quoting *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 412 (5th Cir. 2004))).

district court's decisions at every—or any—stage of the litigation.  The Supreme Court, in explaining why it elected in *Kirtsaeng* to make objective reasonableness the most important factor, explained that "[a] district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense."[33]  Here too, the district court that ruled on four dispositive pretrial motions, sat through an entire jury trial, and sat through an attorney's fees and costs hearing can "easily assess" whether Huffman's claim was unreasonable.

This is why the attorney's fees decision is reviewed only for abuse of discretion.[34]  As we explained in an unpublished case, although attorney's fees are the rule rather than the exception, "[w]e might agree with Defendants that this case falls within the general rule if we were deciding this issue in the first instance.  But the decision to award attorneys fees to a prevailing party in a copyright case is committed 'to the discretion of the *district courts*.'"[35]  The fact that Huffman did not provide enough evidence to succeed on his claims is undisputed—he lost the jury trial, lost on appeal of that verdict, and he is not now challenging that decision.[36]  Just as winning pretrial motions does not mean the case is per se objectively reasonable, losing—even at the motion to dismiss or summary judgment stage—does not mean the case is per se objectively unreasonable.

---

[33] *Kirtsaeng*, 579 U.S. at 207.

[34] *See Fogerty*, 510 U.S. at 534.

[35] *Sahuc v. Mohiuddin*, 166 F. App'x 157, 158 (5th Cir. 2006) (per curiam) (alteration in original) (quoting *Fogerty*, 510 U.S. at 538 (Thomas, J., concurring)).

[36] *Huffman v. Activision Publ'g, Inc.*, No. 22-40067, 2022 WL 3287964, at *2-3 (5th Cir. Aug. 11, 2022) (per curiam).

No. 22-40072

We have previously affirmed fee denials even when the plaintiff lost on summary judgment. For example, in *Armour v. Knowles*,[37] the district court granted summary judgment against the party claiming copyright infringement because of a lack of substantial similarity: "[T]he two songs sound almost nothing alike. . . . The lyrics are also substantially dissimilar."[38] Despite concluding that "a side-by-side comparison of the two songs established clearly that they were not similar . . . [t]he Court does not, however, find that the claims were frivolous or based on any improper motivation. The Court believes that Plaintiff was and continues to be sincere in her mistaken belief."[39] We affirmed the district court's judgment in *Armour* on other grounds because there was no proof of access, meaning we did not need to reach the question of substantial similarity.[40] Likewise, in *Creations Unlimited*, we upheld the district court's denial of fees although the works "differed . . . in too many respects for a layman to conclude that the works were substantially similar."[41] The district court there granted the defendant's motion for summary judgment but still denied fees because the claim, "though ultimately not successful, was neither frivolous nor objectively unreasonable, either in its factual allegations or its legal

---

[37] *Armour v. Knowles*, No. 4:05-CV-02407, 2006 WL 2713787 (S.D. Tex. Sep. 21, 2006), *aff'd*, 512 F.3d 147 (5th Cir. 2007) (per curiam).

[38] *Id.* at *3-4.

[39] *Armour v. Knowles*, No. 4:05-CV-02407, 2006 WL 8446894, at *1 (S.D. Tex. Nov. 7, 2006).

[40] *Armour*, 512 F.3d at 152.

[41] *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (per curiam), *abrogated on other grounds by*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

14

No. 22-40072

undergirding."[42]    The district court did not abuse its broad discretion in denying fees.

## V

Activision and the dissenting opinion argue that the underlying merits should be dispositive in this case. Activision argues the first motion for summary judgment, on the issue of copying, should have been granted, relying on the same arguments it urges with regard to objective unreasonableness.    However, the underlying merits of the case do not determine the attorney's fees question.[43]

There are facts from which the district court concluded that Huffman's claims were not unreasonable.  A copyright infringement claim requires proof of copying by the defendant.[44]  "Absent direct evidence of copying . . . a plaintiff can raise an inference of factual copying from '(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity.'"[45]    Access requires proof that "the person who created the allegedly infringing work had a reasonable opportunity to view [or hear] the copyrighted work."[46]

---

[42] *Creations Unlimited, Inc. v. McCain*, 889 F. Supp. 952, 954-55 (S.D. Miss. 1995).

[43] *See Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208 (2016) ("Courts every day see reasonable defenses that ultimately fail . . . . [I]f some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion.").

[44] *Batiste v. Lewis*, 976 F.3d 493, 501-02 (5th Cir. 2020).

[45] *Id.* at 502 (quoting *Positive Black Talk Inc. v. Cash Money Recs. Inc.*, 394 F.3d 357, 368 (5th Cir. 2004), *abrogated on other grounds by*, *Reed*, 559 U.S. 154).

[46] *Id.* at 503 (alteration in original) (quoting *Armour v. Knowles*, 512 F.3d 147, 152-53 (5th Cir. 2007) (per curiam)) (explaining that the Fifth Circuit has "found a work's widespread dissemination in a relevant market in which the defendant took part sufficient to show a 'reasonable opportunity for access'").

No. 22-40072

Probative similarity can be shown by "'any similarities between the two works,' even as to unprotectable elements, 'that, in the normal course of events, would not be expected to arise independently.' A strong showing of probative similarity can make up for a lesser showing of access."[47] Even "without any proof of access," the plaintiff "may raise an inference of factual copying . . . if the works are 'strikingly similar.'"[48] Striking similarities "are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source."[49] "Once a plaintiff circumstantially establishes factual copying, the defendant may rebut the circumstantial evidence if he can prove that he independently created the work."[50]

Activision argues that there was no evidence of access at trial, substantial evidence of independent creation, and no evidence of striking similarity. However, as a district court in another case explained, "[T]hese are simply facts that were in dispute and that were ultimately resolved against [the plaintiff]. These factual disputes do not establish that [the plaintiff's]

---

[47] *Id.* at 502 (citation omitted) (first quoting *Positive Black Talk Inc.*, 394 F.3d at 370 & n.9; and then citing *id.* at 371). *But cf. Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1040 (5th Cir. 2015) ("Guzman contends that the district court erred in declining to apply a novel 'sliding scale' analysis that would have lowered his access burden. This circuit has never expressly adopted the sliding scale analysis that Guzman advances on appeal, though we have previously noted that such an analysis finds support in other circuits." (footnote omitted)).

[48] *Batiste*, 976 F.3d at 502 (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978)).

[49] *Guzman*, 808 F.3d at 1039 (quoting *Selle v. Gibb*, 741 F.2d 896, 904 (7th Cir. 1984)).

[50] *Armour*, 512 F.3d at 152 (citing *Positive Black Talk Inc.*, 394 F.3d at 367-68).

copyright claims were frivolous or unreasonable."[51] We affirmed that district court's judgment regarding attorney's fees on appeal.[52]

To support his access theory, Huffman provided the following evidence. To promote the comic book and poster, Huffman would "dress up in a camouflage shirt, boots, and . . . recreate the G.I. Bro image." He attended at least twenty-four Comic-Cons, WrestleCons, and wrestling events in this manner. He would bring many different photos and posters with him, and people would pass by his table or line up to make a purchase or meet Huffman—but would not customarily introduce themselves or specify their employer. Well over 100,000 people attended some of these conventions. He attended San Diego Comic-Con in 2015, and he brought examples of the first comic book and set up a table with various photos and posters. In 2015, the Arroza poster in question had not yet been created. However, the Arroza poster was drawn based on Huffman's physical appearance, and it was meant to "capture as close to [Huffman's] face as [the designers] possibly could." "The hair, the facial expressions, the . . . eyes. . . . [E]very aspect of" the poster was meant "to be [Huffman], from head to toe." The illustrations from the comic books were also drawn based on Huffman's physical appearance and costume.

At the 2015 San Diego Comic-Con, Huffman knew Activision had a booth there. Carolyn Wang, an Activision employee, attended San Diego Comic-Con every year from 2012 to 2018 and would observe panels and walk the show floor while there. Wang also attended New York Comic-Con one year—but she could not recall which year. Wang also said that Activision

---

[51] *Baisden v. I'm Ready Prods., Inc.*, 804 F. Supp. 2d 549, 556 (S.D. Tex. 2011), *aff'd*, 693 F.3d 491 (5th Cir. 2012).

[52] *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d at 510.

employees would attend Comic-Cons, with the number varying by year. Both Huffman himself and the comic book examples were present at the 2015 San Diego Comic-Con Wang attended, and the other Comic-Cons Huffman attended with his poster and costume any Activision employee could have attended. Travis Huffman also posted the Arroza poster on his social media, and Booker Huffman held a collectible show and memorabilia signing in 2016 thirty minutes from Activision's headquarters in Los Angeles. The district court could conclude, based on this evidence, that Huffman's claim was reasonable.

Activision did provide significant evidence of independent creation: ten well-documented design rounds creating concept art. Activision cast a model who looked similar to the concept art and conducted a photoshoot. However, as trial testimony indicated, there is no image from the photo shoot that is "identical" to the Prophet Image. The idea for the Prophet Image existed before the photoshoot and parts of it remained after the photoshoot. Further, a legal checklist provided by Activision covering the Prophet Image marked that it had both elements of a "paint-over" and a "composite," defined as "a technique that utilizes various images found on the internet and/or other places and using those elements either in its [sic] entirety or some portions of those images and creating a Frankenstein version of an image."[53] It was not an abuse of discretion to conclude that Huffman's claim that Activision had been inspired by the Arroza poster for its concept art and eventual Prophet Image was not unreasonable. The same is true for striking similarity; the district court found that "the two clearly share similarities" and could potentially be strikingly similar. Regardless of whether we, on a fresh look at the images, might disagree that there are too many differences

---

[53] *But see Batiste*, 976 F.3d at 504 ("The defendants' sampling of other artists' [works] hardly proves that they had access to [the plaintiff's] works.").

No. 22-40072

for the images to be strikingly similar, there are enough similarities that the district court's conclusion regarding unreasonableness was not an abuse of discretion.

## VI

Activision also argues that the district court abused its discretion by "fail[ing] to analyze each of the *Fogerty* factors" aside from objective reasonableness. "Although these factors are useful, we have 'rejected the idea that district courts are bound to apply verbatim the factors listed [in *Fogerty*].'"[54] As discussed in Part III, we have frequently upheld a district court's determination when it simply stated its conclusions.[55] The district court, however, did substantially more: its conclusions were stated after careful explanation of each of Activision's and Huffman's arguments.

The district court did not ignore the factors other than objective reasonableness—it listened to arguments regarding the factors during a lengthy hearing and through briefing and correctly recited those arguments in its order. We have explained that "[a]lthough appellate review would [be] easier with a written statement of reasons [on the other factors], the court did not err or abuse its discretion under the circumstances of this case."[56] "The

---

[54] *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 589 (5th Cir. 2015) (alteration in original) (quoting *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 412 (5th Cir. 2004)).

[55] *See also Hunn v. Dan Wilson Homes, Inc.*, No. 5:12-CV-081, 2014 WL 11310154, at *2 (N.D. Tex. Mar. 5, 2014), *aff'd*, 789 F.3d 573 (5th Cir. 2015) ("The Court makes these findings after carefully considering the parties' arguments, attached documents and affidavits, and claims and defenses raised by each party."); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 817 (5th Cir. 1997) (noting that the district "court properly applied the *Lieb* factors and also 'considered the arguments put forth by the [defendants] in their memorandum brief' before denying the [defendants'] motion").

[56] *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).

court cited and, we are confident, applied the relevant authorities, and it explicitly stated that its award promotes the purposes of the Copyright Act and is reasonable. By necessary inference," the court did not find Activision's arguments on the other factors persuasive.[57]

The district court addressed Activision's arguments that awarding fees would compensate Activision for its expenses fighting an unfounded lawsuit and chill other lawsuits that would be brought in bad faith; satisfy compensation and deterrence by not encouraging defendants facing frivolous lawsuits to settle; and satisfy motivation because Huffman pursued the case in bad faith by ignoring the overwhelming evidence of independent creation given to him early on and by Huffman's attorneys soliciting a new case, which cost Activision millions in legal fees. These arguments are underpinned by the idea that the lawsuit was unfounded, frivolous, and pursued despite a lack of evidence and overwhelming evidence in Activision's favor. These are the same arguments Activision has raised on appeal: fees would compensate Activision for spending money fighting this lawsuit instead of creating new work, while signaling to future litigants that they "should thoroughly investigate a claim before filing, and if it becomes clear during litigation that the claims have no merit . . . dismiss them," and discourage acting in bad faith such as persisting despite "irrefutable evidence that negated [the] allegations."

The district court next set forth Huffman's arguments countering that underlying allegation of unreasonableness. Huffman argued that his claims were not baseless or pursued in bad faith—as evidenced by "the Court's consistent rulings that [the] case could not be disposed of prior to going to the jury"; the fact that Huffman's attorney did not solicit another lawsuit

---

[57] *Id.* at 578.

after discovery in this case (which would, regardless, have nothing to do with Huffman); and the fact that Activision supports its compensation and deterrence argument by characterizing Huffman's claims as unreasonable and frivolous, which they were not.

The district court then weighed all of this. At the conclusion of its analysis of the objective reasonableness factor, it explained that "[f]rivolousness is not argued. Defendants' arguments for compensation and deterrence are underpinned by their objective unreasonableness arguments that the Court has already found unavailing. Defendants' arguments regarding motivation are also at least partially supported by similar arguments." This is more analysis than was done in the cases Activision cites, in which we affirmed district courts merely explaining they found no "particular need 'to advance considerations of compensation and deterrence.'"[58] Rather than ignore the other *Fogerty* factors, the district court listed the arguments on both sides, and this court can then infer, per *Bridgmon*, that the district court did not find them persuasive.[59]

The district court said the other factors were underpinned and partially supported by objective reasonableness likely because that is the way Activision argued its case. We have affirmed other district courts'

---

[58] *Baisden v. I'm Ready Prods., Inc.*, 804 F. Supp. 2d 549, 554-56 (S.D. Tex. 2011), *aff'd*, 693 F.3d 491 (5th Cir. 2012); *Creations Unlimited, Inc. v. McCain*, 889 F. Supp. 952, 954-55 (S.D. Miss. 1995), *aff'd*, 112 F.3d 814 (5th Cir. 1997) (per curiam).

[59] *Bridgmon*, 325 F.3d at 578 ("Although appellate review would have been easier with a written statement of reasons [for the other factors], the court did not err or abuse its discretion under the circumstances of this case. . . . The court cited and, we are confident, applied the relevant authorities, and it explicitly stated that its award promotes the purposes of the Copyright Act and is reasonable. By necessary inference, the higher amount sought by [the defendant] was unreasonable.").

acknowledgment of the same type of underpinning.[60]  The district court explained that "Defendants' underlying theme for their fees motion is that Plaintiff should have known that his claims were unreasonable by . . . May 2020, at the latest.  Belying that argument, however, is the fact that the Court considered and denied several of Defendants' dispositive motions . . . as late as May 2021."  Regardless of the underlying merits of those motions, the point remains that it was not a sign of bad faith to continue to pursue claims when Huffman received indications from the court that his claims were potentially meritorious.

As for other arguments, Activision claimed that Huffman acted in bad faith by using "discovery from this lawsuit—including at least one document Defendants produced and deposition testimony—to engineer a second lawsuit against Defendants on behalf of a different plaintiff regarding a different video game."  Huffman vigorously objected to this characterization, explaining to the district court that "Defendants know that Plaintiff's counsel did not solicit Clayton Haugen as a client.  Defendants know that Plaintiff's counsel received an unsolicited call from him regarding his potential claims.  Those claims are based on undisputed facts about Defendants' copying."  Huffman also included a screenshot of a message from the model in the Haugen case messaging Haugen, the photographer, to the effect that Activision was aware of his work and copied it.

Even if the allegations regarding Huffman's use of discovery were true, we have concluded there was bad faith in cases like these in which the

---

[60] *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2014 WL 11510263, at *2 (S.D. Tex. May 12, 2014), *aff'd sub nom.*, *Macro Niche Software, Inc. v. Imaging Sols. of Austl.*, 603 F. App'x 351 (5th Cir. 2015) (per curiam) ("When a copyright claim is objectively reasonable and brought in good faith, the need for compensation of attorney's fees and for deterrence is minimal.").

plaintiff is a serial litigator—not when his or her attorney has two cases.[61]  In *Bell v. Eagle Mountain Saginaw Independent School District*,[62] for example, we affirmed the district court's determination of fees because the motivation factor weighed against the plaintiff, as he was a serial litigator "who [had] 'filed over **26** copyright infringement lawsuits since 2006 and obtained settlements from at least **90** different alleged infringers,' almost exclusively public school districts and non-profits."[63]

In the present case, the district court thoroughly recited and considered all the arguments on the factors presented to it.  The district court did not abuse its discretion in concluding that the factors supported its conclusion as to attorney's fees.

*      *      *

Accordingly, the judgment of the district court is AFFIRMED.

---

[61] *See, e.g.*, *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 529 F. Supp. 3d 605, 617 (N.D. Tex. 2021), *aff'd*, 27 F.4th 313 (5th Cir. 2022).

[62] 27 F.4th 313 (5th Cir. 2022).

[63] *Bell*, 529 F. Supp. 3d at 617.

No. 22-40072

Andrew S. Oldham, *Circuit Judge*, dissenting:

With the utmost respect for my learned colleagues who see this case differently, I would hold that the district court abused its discretion in refusing to award attorney's fees. I respectfully dissent.

*

This court has "repeatedly stated that 'an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely.'" *Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365, 386 (5th Cir. 2020) (quotation omitted). True, a fee award should not be "automatic." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). But such an award presumptively "advances the Copyright Act's goals." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016). So at a bare minimum, a tie should go to the fee applicant.

I do not think this is a close case. But even if it were close, Activision should still get its fees. That is for several reasons. But I will discuss only two.

*

First, Huffman's suit was clearly unreasonable—a factor that must be given "substantial weight." *Id.* at 210.[1] To prove copyright infringement, Huffman had to establish that Activision had "access" to the Arroza poster

---

[1] The district court erred by finding Huffman's suit objectively reasonable because it had denied Activision's dispositive motions. That alone cannot make a suit reasonable. Such denials, even when correct, often indicate little about a suit's reasonableness. Plaintiffs can plead past Rule 12, for example, even when the complete lack of evidence makes the plaintiffs' odds of ultimate success zero. And, of course, the district court's denial could be erroneous—as evidenced here. Moreover, that rule would insulate the district court's fee decisions from meaningful appellate review any time the prevailing party's dispositive motions were denied. Such unwarranted deference to the district court would abdicate our duty to exercise independent judgment.

prior to creating the Prophet image. *See Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020) (quotation omitted). And our precedent is clear that the mere *speculative possibility* of access is insufficient. *See Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 394–95 (5th Cir. 2001) ("A bare possibility [of access] will not suffice; neither will a finding of access based on speculation or conjecture.").

But Huffman offered the barest of bare possibilities. He pointed to the fact that both he and a single Activision employee once attended the same Comic Con. But that *predated* the Arroza poster's creation. Huffman also speculated that some other Activision employee might have seen his poster at some other Comic Con that he attended, though no such evidence was adduced. Huffman then noted that he once had a collectible show in the sprawling metropolis of Los Angeles, which just so happens to be where Activision is headquartered. Finally, Huffman highlighted that his business associate posted the Arroza image online. This is speculation piled on fantasy piled on a pipe dream.

By contrast, all of Activision's deponents said they had never seen Huffman's poster. And not a single one of Activision's more than 480,000 pages of documents referenced the poster. Huffman could not establish access.

In the absence of access, Huffman had to prove the images were "strikingly similar." *Batiste*, 976 F.3d at 502 (quotation omitted). He could not. Striking similarity is a high bar: Only similarity so strong that it cannot possibly be explained by independent creation suffices. *See Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1039 (5th Cir. 2015). Despite some common features between the two images, they "are in no way similar enough for a reasonable jury to make . . . a finding" of striking similarity. *Armour v. Knowles*, 512 F.3d 147, 156 n.19 (5th Cir. 2007).

No. 22-40072

Moreover, Activision provided overwhelming evidence of independent creation. *See ante*, at 18; *cf. Kirtsaeng*, 579 U.S. at 205–06 (noting that objective reasonableness concerns whether a party "has good reason to bring *and maintain* a suit" and "to litigate . . . to judgment" (emphasis added)); *Sullivan v. Flora, Inc.*, 936 F.3d 562, 575–76 (7th Cir. 2019) (assessing the objective reasonableness of a defense "pressed at trial"). A defendant can defeat a copyright claim if he shows that "he independently created the work." *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 368 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Here, with the (expensive) help of external vendors, Activision engaged in ten design rounds to create the concept art for the Prophet. Then Activision considered several models before casting William Romeo. Thousands of photographs of Mr. Romeo were taken in a wide variety of poses. And after a single photo was selected, digital enhancements were added. Activision independently created the Prophet. Thus, the objective reasonableness factor clearly supports Activision.

\*

Second, the compensation and deterrence factor also heavily favors Activision. *See Fogerty*, 510 U.S. at 534 n.19 (listing this as an important factor). Activision argued that it deserved compensation for spending millions of dollars to successfully defend a baseless suit seeking $32 million. And it argued that awarding fees would deter other baseless suits against the video-game giant. I wholeheartedly agree.

The majority opinion (like the district court) treats fee-shifting as the exception rather than the rule. In my view, that is erroneous. I respectfully dissent.